28 F.3d 89
 Louis SCHNEIDER, Plaintiff-Appellant,
v.
COUNTY OF SAN DIEGO, a municipal corporation; Norman
Hickey, in his official capacity as Chief Administrative
Officer for the County of San Diego, et al.; Reybro, Inc.,
a California corporation dba Quality Auto Recycling;
Gregory Reynolds, dba Quality Auto Recycling, Defendants-Appellees.
 No. 92-56327.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 10, 1994.
Decided June 28, 1994.
As Amended on Denial of Rehearing and Rejection of
Suggestion for Rehearing En Banc Oct. 11, 1994.
 
 Kenneth J. Chesebro, Cambridge, MA, for plaintiff-appellant.
 Morris G. Hill, Deputy County Counsel, County of San Diego, San Diego, CA, for defendant-appellee.
 Todd D. Jones, Klinedinst, Fliehman, McKillop & Jones, San Diego, CA, for defendant-appellee Reybro.
 Appeal from the United States District Court for the Southern District of California.
 Before: WALLACE, Chief Judge, FARRIS and KLEINFELD, Circuit Judges.
 Opinion by Chief Judge WALLACE.
 WALLACE, Chief Judge:
 
 
 1
 Schneider appeals from the district court's summary judgment in favor of San Diego County, automotive tower and dismantler Reybro, Inc., with its president, Gregory Reynolds, (collectively Reybro), on his 42 U.S.C. Sec. 1983 claims arising from the County's abatement of a public nuisance by removing vehicles from his property and destroying them. The district court had jurisdiction under 28 U.S.C. Sec. 1331. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291. We affirm in part and reverse in part and remand.
 
 
 2
 * In 1989, Schneider owned a 1.4 acre lot in a rural, agriculturally zoned part of San Diego County, not far from the City of Oceanside. Schneider did not reside on the property but rented out the house located on the lot. He did, however, park nine buses, two motorhomes, and two automobiles on the lot in an open field approximately 240 feet from the house. These vehicles were visible from the public road that runs in front of Schneider's lot.
 
 
 3
 After receiving a number of complaints about the vehicles, the County instituted an investigation. County officers determined that the vehicles were parked on the lot in violation of county zoning ordinances and that they constituted a public nuisance. The County was not successful in persuading Schneider to abate the nuisance voluntarily and on September 26, 1989, it posted a NOTICE AND ORDER TO ABATE on the property. The notice stated that the presence of the vehicles on the property violated San Diego County Zoning Ordinance Secs. 1006(a), 1430(b), 1430(i), 1430(j), and 6799; and County Regulatory Code Secs. 21.601 and 78.101. The nuisance could be abated, the notice advised, by removal of non-operable vehicles and those not licensed to the lot address.
 
 
 4
 Schneider requested an appeal hearing before the County Abatement Board, and it was held on November 6, 1989. The hearing officer subsequently issued an order of abatement, concluding that Schneider had violated San Diego County Code Secs. 1006 (applicability of zoning ordinance) and 6799 (parking of commercial vehicles in agricultural and certain other areas), and that these violations constituted a public nuisance. The order gave Schneider 30 days to abate the nuisance by "removing all vehicles" from the property. The order further provided that if Schneider did not comply, the County was authorized "to do or cause to be done whatever work is necessary to abate the public nuisance and otherwise to proceed pursuant to sections 16.212 through 16.217 of the San Diego County Code of Regulatory Ordinances." The hearing officer did not make a finding that any of these vehicles were abandoned, wrecked, dismantled, or inoperative.
 
 
 5
 Schneider took no action to remove the vehicles from his property, nor did he seek judicial review of the abatement order. On December 21, 1989, the County, through its agent Reybro, abated the nuisance by towing the vehicles from the lot. Subsequently, Reybro dismantled or destroyed the vehicles and sold the remains as scrap.
 
 
 6
 Schneider filed this action pursuant to 42 U.S.C. Sec. 1983, alleging that the County and Reybro had violated his civil rights. He also asserted claims under California law. The parties each filed motions for summary judgment. The district court granted summary judgment to the County and to Reybro, denied Schneider's motions for summary judgment, and dismissed the action.
 
 
 7
 We review de novo the district court's summary judgment in favor of the County and Reybro. Jones v. Union Pacific R.R. Co., 968 F.2d 937, 940 (9th Cir.1992). Our tasks on appeal are to determine (1) whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact; and (2) whether the district court correctly applied the relevant substantive law. Federal Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992), cert. granted, --- U.S. ----, 114 S.Ct. 543, 126 L.Ed.2d 445 (1993).
 
 II
 
 8
 Schneider first argues that the County and Reybro violated the Fourth Amendment's bar against unreasonable seizures when they entered his property and removed his vehicles.
 
 
 9
 He relies on our opinion in Conner v. City of Santa Ana, 897 F.2d 1487, 1492 (9th Cir.) (Conner ), cert. denied, 498 U.S. 816, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990), which held that the City of Santa Ana violated the Fourth Amendment by removing a fence and entering a backyard to remove derelict vehicles that had been declared nuisances.
 
 
 10
 The Fourth Amendment's warrant requirement applies to entries into private premises to search for and abate suspected or declared nuisances. Michigan v. Tyler, 436 U.S. 499, 504-05, 98 S.Ct. 1942, 1947, 56 L.Ed.2d 486 (1978); Conner, 897 F.2d at 1490. "[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant." Cady v. Dombrowski, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973) (internal quotations omitted); Conner, 897 F.2d at 1491.
 
 
 11
 One such clearly recognized exception to the warrant requirement pertains to the "open fields" doctrine. Seventy years ago in Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924), the Supreme Court held that the Fourth Amendment's protection of "persons, houses, papers, and effects" does not apply to open fields. "[O]pen fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance." Oliver v. United States, 466 U.S. 170, 179, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984). Therefore, any "asserted expectation of privacy in open fields is not an expectation that society recognizes as reasonable." Id. (internal quotations omitted).
 
 
 12
 We need not determine whether the vehicles were within the curtilage of the rented house rather than an open field. See United States v. Dunn, 480 U.S. 294, 301-03, 107 S.Ct. 1134, 1139-40, 94 L.Ed.2d 326 (1987). Schneider did not live in the home and, having suffered no invasion of privacy, would not have standing to complain that its curtilage was invaded without a warrant. See Maisano v. Welcher, 940 F.2d 499, 503 (9th Cir.1991) (Maisano), cert. denied, --- U.S. ----, 112 S.Ct. 1957, 118 L.Ed.2d 560 (1992). Because Schneider did not have a reasonable expectation of privacy in the area where his vehicles were located, neither the County nor Reybro needed a warrant to enter the property.
 
 
 13
 Schneider argues that a warrant was necessary before his vehicles could be seized. Clearly, Schneider's vehicles were seized within the meaning of the Fourth Amendment, but they were not seized unreasonably. In G.M. Leasing Corp. v. United States, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), the Supreme Court approved an analogous warrantless seizure of automobiles, explaining,
 
 
 14
 The seizures of the automobiles in this case took place on public streets, parking lots, or other open places, and did not involve any invasion of privacy. In Murray's Lessee v. Hoboken Land & Improv. Co., 18 How. 272 [15 L.Ed. 372] (1856), this Court held that a judicial warrant is not required for the seizure of a debtor's land in satisfaction of a claim of the United States. The seizure in Murray's Lessee was made through a transfer of title which did not involve an invasion of privacy. The warrantless seizures of the automobiles in this case are governed by the same principles and therefore were not unconstitutional.
 
 
 15
 Id. at 351-52, 97 S.Ct. at 628; see also Maisano, 940 F.2d at 502-03. Unlike the seizures in G.M. Leasing, the seizures in this case were not "in satisfaction of a claim of the United States." But they were authorized pursuant to the police power of the State of California. Cal. Gov't Code Sec. 25845 (West 1988); City of Costa Mesa v. Soffer, 11 Cal.App.4th 378, 383, 13 Cal.Rptr.2d 735 (1992) (Soffer ). Because the warrantless seizure in this case did not impinge on any legitimate privacy interest, the abatement hearing was sufficient to establish the validity and reasonableness of the seizure. See Conner, 897 F.2d at 1491. No warrant was required. Schneider also argues that his vehicles were seized in violation of the Fourth Amendment when Reybro destroyed them without a warrant. We do not decide the issue because Schneider raised this theory for the first time on appeal. As an appellate court, our review is limited to the record presented to the district court at the time of summary judgment. Brogan v. San Mateo County, 901 F.2d 762, 765 (9th Cir.1990). We will not consider this argument.
 
 III
 
 16
 Schneider next contends that his due process rights were violated because the County did not give him notice of its intention to deprive him of his vehicles permanently by allowing Reybro to dismantle them and sell the parts as scrap. Clearly Schneider has a protectable interest. "Loss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause." Stypmann v. City & County of San Francisco, 557 F.2d 1338, 1342 (9th Cir.1977); see also Harris v. County of Riverside, 904 F.2d 497, 503 (9th Cir.1990) (Harris ). This principle applies to Schneider with particular force because the deprivation is permanent.
 
 
 17
 Due process requires that Schneider be given notice and an "opportunity to be heard at a meaningful time and in a meaningful manner." Brock v. Roadway Express, Inc., 481 U.S. 252, 261, 107 S.Ct. 1740, 1747, 95 L.Ed.2d 239 (1987). For the notice to satisfy due process, it must "be of such nature as reasonably to convey the required information." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (Mullane ); Harris, 904 F.2d at 503.
 
 
 18
 Pursuant to San Diego County Code Secs. 16.205 and 16.206, Schneider was notified that his vehicles had been declared a public nuisance. At Schneider's request, the County Abatement Board held an appeal hearing at which he presented evidence, testified, and cross-examined county officers. Subsequently, the hearing officer affirmed the nuisance finding, on the theory that the vehicles were parked on Schneider's lot in violation of county zoning ordinances, and ordered Schneider to remove his vehicles. Schneider chose to ignore the abatement order. He also neglected to seek judicial review of the abatement order, which was available pursuant to California Civil Procedure Code Sec. 1094.5. Acting with the authority of the Board's order, the County abated the nuisance by causing Reybro to tow the vehicles.
 
 
 19
 The County did not violate Schneider's due process rights when it abated the nuisance on his property by removing the vehicles. However, the record does not show that the vehicles were themselves nuisances. The hearing officer affirmed the nuisance finding pursuant to Regulatory Code Sec. 16.210, on the theory that Schneider's vehicles were parked in violation of county zoning ordinances. This action was binding on the County and Reybro as well as Schneider. Once the vehicles were removed from the property the nuisance abatement was complete and the County was only authorized "to otherwise proceed pursuant to sections 16.212 through 16.217 of the San Diego Code of Regulatory Ordinances." These sections do not authorize the destruction of vehicles; they provide a procedure for recovering the cost of the abatement proceedings.
 
 
 20
 The County and Reybro argue that because the posted NOTICE AND ORDER TO ABATE informed Schneider that he was in violation of County Code Sec. 78.101, he was on notice that his vehicles could be disposed of pursuant to section 78.114, "by removal to a scrap yard or licensed automobile dismantler's yard." However, San Diego County Code Secs. 78.101 through 78.118 and their authorizing statute, California Vehicle Code Sec. 22660, apply only to vehicles declared to be public nuisances because they are "abandoned, wrecked, dismantled, or inoperative." San Diego County Code Sec. 78.101; Soffer, 11 Cal.App.4th at 383, 13 Cal.Rptr.2d 735.
 
 
 21
 We hold that following the hearing officer's order the County was obligated to proceed on the theory that Schneider's vehicles were nuisances only because they were parked in violation of county zoning ordinances. Therefore, County Code Sec. 78.114 was not applicable to Schneider's vehicles, and the citation of County Code Sec. 78.101 in the NOTICE AND ORDER TO ABATE did not provide Schneider the notice required by due process. See Mullane, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. 865; Harris, 904 F.2d at 503. The district court erred in granting summary judgment on this issue.
 
 IV
 
 22
 Schneider argues for the first time on appeal that the destruction of his vehicles was a taking without just compensation in violation of the Fifth and Fourteenth Amendments. We will not address this new argument. We recognize that the County argued defensively in its summary judgment motion that towing Schneider's vehicles was within the nuisance exception to the takings clause. But that is not the same issue that Schneider now raises and, in any event, the district court did not address it. This issue should be resolved first, if at all, by the district court.
 
 
 23
 We also do not address the arguments raised by the County and Reybro relating to absolute and qualified immunity. The district court granted summary judgment without reaching the immunity issues. These issues should be addressed in the first instance by the district court. On remand, Schneider is free to present any state law claims contained in his complaint.
 
 
 24
 AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.