Filed 11/22/23  In re G.H. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re G.H. et al., Persons Coming Under the Juvenile Court Law. | B325699 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP03752A-B) |
| Plaintiff and Respondent, | |
| v. | |
| E.H.-C., | |
| Defendant and Appellant; | |
| K.M., | |
| Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Temporary Judge.  Affirmed.

Shaylah Roxanne Padgett-Weibel, under appointment by the Court of Appeal, for Defendant and Appellant.

Anne E. Fragasso, under appointment by the Court of Appeal, for Respondent.

No appearance for Plaintiff and Respondent.

Ann-Marissa Cook and Elisabeth Carter, Children's Law Center, for Minors.

_____

E.H. (father) appeals the juvenile court's December 5, 2022 custody and visitation order (Exit Order) under Welfare and Institutions Code section 362.4.[1]  Father contends the Exit Order does not accurately reflect the order made by the court on November 28, 2022, and that the discrepancy is prejudicial to him.  We affirm.

## BACKGROUND[2]

After the court declared minors dependents under section 300, subdivisions (a) and (b), based on domestic violence between mother and father and father's alcohol abuse, it removed minors from parental custody and ordered reunification services for mother and father, including monitored visits.  By the six-month review hearing in May 2022, mother had made substantial progress in her case plan, and the court ordered the children

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] We "review the record in the light most favorable to the court's determinations."  (*In re M.R.* (2017) 8 Cal.App.5th 101, 108.)

released to mother at maternal grandmother's home. Father's progress had not been substantial, but he would continue receiving services and monitored visits.

According to the 12-month review report filed by the Los Angeles County Department of Children and Family Services (Department), father tested negative for drugs 24 times between May and October 2022, with one no-show on May 24, 2022. In May 2022, father was arrested, but released with no charges filed. Father's visits with the children went well, but the Department declined to liberalize father's visits "due to the nature of his arrest." Father completed a parenting program and 26 weeks of a domestic violence program. He had continued attending weekly individual therapy sessions, and his therapist was ready to discharge him after the scheduled review hearing. Father had not yet completed his substance abuse program because he had missed a number of sessions.

At the November 28, 2022 review hearing under section 364, the juvenile court ordered dependency jurisdiction to terminate, pending receipt of a custody order to be prepared by mother's counsel ordering the following: "Sole physical custody to Mother, joint legal custody; monitored visits for the father based on the fact that he's only in partial compliance, that he has been inconsistent in his drug program missing sessions, inconsistent with his A.A. meetings, which is a very important component of maintaining sobriety, and only attending a couple times per month. [¶] And the court is going to order he get a minimum of nine hours of monitored visits in a neutral setting. Mother is not to be present. By a mutually agreed-upon monitor or professionally paid monitor by the father." The court continued: "I also am going to order that the JV-206 include the case plan of the father so that

3

he can go to family law court and request to have it modified once he is in compliance with his case plan."

The custody order signed by the court on December 5, 2022, consists of three Judicial Council forms: JV-200 (Custody Order-Juvenile-Final Judgment), JV-205 (Visitation [Parenting Time] Order-Juvenile), and JV-206 (Reasons For No Or Supervised Visitation-Juvenile). Based on the checkboxes marked on the JV-206 form, the court ordered supervised visitation because father had not completed or had not made substantial progress in the following programs: drug abuse treatment program with random testing, domestic violence treatment program for offenders, individual counseling, and "[o]ther," followed by the text: "Comply with all criminal court orders."

Father filed his notice of appeal on November 29, 2022. On April 27, 2023, this court granted father's request to correct the notice of appeal to include the December 5, 2022 order.

## DISCUSSION

Father contends that because the Exit Order does not accurately reflect the orders stated by the court on November 28, 2022, this court should reverse and remand with directions to correct the Exit Order. Mother filed a respondent's brief arguing that father forfeited the issue by failing to object in the juvenile court; alternatively, she argues that father has not shown prejudice.[3]

_____

[3] The Department did not file a respondent's brief and takes no position on the merits of father's appeal. Minors submitted a letter of non-objection, stating they agreed with father's contention and do not object to father's request that the

4

We first briefly consider the question of prejudice. Father claims he is prejudiced by the Exit Order because it incorrectly implies that he has not substantially completed portions of his case plan beyond the substance abuse program identified by the court on November 28, 2022, limiting his ability to modify the order in family court. The Supreme Court in *In re Chantal S.* (1996) 13 Cal.4th 196, 203–204 held that section 362.4 gave the juvenile court authority to place conditions on an exit order. Those conditions then restrict the family court's ability to modify the juvenile court's exit order, absent a change of circumstances. (*Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1164 ["before modifying the visitation schedule set forth in the exit order, the family court must find a significant change of circumstances that warrants that modification"].)[4] Father claims that because the

_____

matter be remanded to the juvenile court to correct the Exit Order to ensure that it conforms to the court's orders as stated on the record.

[4] *Heidi S., supra*, 1 Cal.App.5th at p. 1165 provides a more detailed explanation of the relationship between the juvenile court and family court with respect to custody and visitation orders: "When the juvenile court terminates its jurisdiction, it issues an exit order 'determining the custody of, or visitation with, the child' that becomes part of an existing family law case or the basis for opening a family law file (Welf. & Inst. Code, § 362.4); the exit order 'shall be a final judgment and shall remain in effect after [the juvenile court's] jurisdiction is terminated.' (Welf. & Inst. Code, § 302, subd. (d).) [¶] Once an exit order is in place, ' "the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining" that custody arrangement.' (*In re Marriage of*

5

additional programs are incorrectly listed as conditions of his monitored visitation, he will be unable to obtain unmonitored visits without repeating the programs. We agree with father that based on the reporter's transcript of the November 28, 2022 hearing, the court did not order father to repeat his entire case plan to move to unmonitored visits. (*People v. Holzmann* (2018) 18 Cal.App.5th 1241, 1243, fn.1 ["when there is a conflict between the reporter's transcript and the clerk's transcript, we adopt the version due more credence under the circumstances"].) But because the problem is a clerical error, rather than a judicial error, father's recourse is with the juvenile court and not on appeal.

Father should have simply sought a new or nunc pro tunc order with the correct conditions on father's monitored visits, rather than pursuing the current appeal. "Trial courts have the authority to enter nunc pro tunc orders to address *clerical* errors, but not *judicial* errors." (*Sannmann v. Department of Justice* (2020) 47 Cal.App.5th 676, 683; Code Civ. Proc., § 473, subd. (d) ["The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed"].)

---

*Brown & Yana* (2006) 37 Cal.4th 947, 956.) The family court may modify the exit order only if 'the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child.' (Welf. & Inst. Code, § 302, subd. (d).) Therefore, the moving party has a twofold burden, to show a significant change of circumstances since the juvenile court issued the exit order and to show why the requested modification would be in the child's best interests."

"An order made nunc pro tunc should correct clerical error by placing on the record what was actually decided by the court but was incorrectly recorded.  It may not be used as a vehicle to review an order for legal or judicial error by 'correcting' the order in order to enter a new one." (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 891; see also *In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 851–855 [discussing use of nunc pro tunc orders in marriage dissolution context].)

Father argues in his reply brief that the issue was not forfeited on appeal because the parties and their counsel were not present in court on December 5, 2022, when the custody order was signed and filed.  However, father fails to explain why, once December 5, 2022 order was filed and the discrepancy between the court's oral and written orders became apparent, it was not brought to the court's attention with a request to correct the problem.  "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)  "Otherwise, opposing parties and trial courts would be deprived of opportunities to correct alleged errors, and parties and appellate courts would be required to deplete costly resources 'to address purported errors which could have been rectified in the trial court had an objection been made.' [Citation.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 406.)  "The forfeiture doctrine has been applied in dependency proceedings in a wide variety of contexts, including cases involving failures to obtain various statutorily required reports [citation]; failure to object to the adequacy of an adoption assessment [citations]; failure to request an alternative placement [citation]; and failure to require expert testimony and to make the required findings using the beyond-a-

7

reasonable-doubt standard as mandated by ICWA [citation]." (*In re G.C.* (2013) 216 Cal.App.4th 1391, 1398–1399.)

By failing to take steps to correct the clerical discrepancy between what the court ordered on November 28, 2022, and what appeared in the Exit Order signed by the court, father forfeited the issue on appeal. Nothing in our opinion precludes father from seeking a nunc pro tunc corrective order in the juvenile court.

## DISPOSITION

The custody and visitation orders are affirmed.
NOT TO BE PUBLISHED.

MOOR, J.

We concur:

RUBIN, P. J.

KIM, J.

8